NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

NICOLE ELAINE SRERY, *Petitioner*,

*v.*

THE HONORABLE RICHARD J. HINZ, Judge Pro Tem of the
SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County
of MARICOPA, *Respondent Judge Pro Tem*,

RICHARD PAUL SRERY, *Real Party in Interest*.

No. 1 CA-SA 17-0251
FILED 11-21-2017

Petition for Special Action from the Superior Court in Maricopa County

No. FC2010-093882

The Honorable Richard J. Hinz, Judge *Pro Tempore*

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Alexander R. Arpad, Attorney at Law, Phoenix
By Alexander R. Arpad
*Co-Counsel for Petitioner*

Zanon Law Offices, Phoenix
By Daniel A. Zanon, Bradley Miller
*Co-Counsel for Petitioner*

Stanley David Murray, Attorney at Law, Scottsdale
By Stanley David Murray
*Co-Counsel for Real Party in Interest*

Cantor Law Group, PLLC, Phoenix
By Bryan Blehm
*Co-Counsel for Real Party in Interest*

---

**MEMORANDUM DECISION**

Presiding Judge James P. Beene delivered the decision of the Court, in which Judge Randall M. Howe and Judge Kent E. Cattani joined.

---

**B E E N E**, Judge:

**¶1**     Nicole Elaine Srery ("Mother") seeks special action relief from the superior court's order finding that Arizona lacks jurisdiction to enforce her child custody agreement with Richard Paul Srery ("Father"). For the following reasons, we accept jurisdiction, but deny relief.

## FACTS AND PROCEDURAL HISTORY

**¶2**     Mother and Father share joint custody of their two children, C.S. (born in 2006) and J.S. (born in 2008) (collectively the "Children"). When Mother and Father divorced in 2010 and entered into the Joint Custody Parenting Plan ("Parenting Plan"), all parties resided in Arizona. In pertinent part, the Parenting Plan provided that

> The parties agree to review this plan every twelve (12) months, and to make any necessary changes herein. If a major change arises (such as moving or remarriage) and the arrangements set forth herein are no longer feasible, then the parents, upon either party's request, shall set a time within fourteen (14) days of the request to review this plan, and to make changes as needed.

> * * * *

> The parties agree the parenting time plan (schedule) set forth herein shall remain in effect unless the parties stipulate to other arrangements prior to the scheduled parenting time.

\* \* \* \*

> Both parents agree that while a dispute is being resolved, neither parent shall deviate from the parenting plan, or act in such a way that is inconsistent with the terms of this agreement.

\* \* \* \*

> . . . if either parent intends to relocate with a child outside of the State of Arizona, that parent shall comply with all of the provisions of ARS § 25-408 which includes a requirement to provide at least 60 days written notice of his or her intent to relocate.

¶3        In 2014, Father moved to Nebraska.  Although the Children remained in Arizona with Mother, Father continued to exercise his shared parenting time over the next two years.  In early 2016, the parties verbally agreed that the Children would live with Father in Nebraska for the 2016-2017 school year.  As the end of the school year approached, Father requested that the Children stay in Nebraska longer.  Mother refused. Nevertheless, Father kept them in Nebraska.

¶4        Mother filed a petition in Arizona to enforce the Parenting Plan and an evidentiary hearing was held in August 2017.  The court *sua sponte* questioned whether jurisdiction was proper in Arizona or Nebraska. After hearing testimony, the court found that "Arizona no longer remains the home state of the children for a variety of reasons" and that jurisdiction was proper in Nebraska.  Mother then sought special action review.

## JURISDICTION

¶5        Accepting special action jurisdiction is appropriate here because during the pendency of an appeal, Mother's parental rights would be impaired and the Children "would face a prolonged period of uncertainty concerning [their] living arrangement." *Sheets v. Mead*, 238 Ariz. 55, 56, ¶ 6 (App. 2015).  Thus, Mother has no equally plain, speedy, and adequate remedy by appeal.  Ariz. R.P. Spec. Act. 1(a).  "Additionally, cases involving potential custody of young children are also often appropriate for special action relief to achieve a speedy resolution." *Antonsen v. Superior Court*, 186 Ariz. 1, 4 (App. 1996).

**DISCUSSION**

¶6      Mother argues the superior court abused its discretion by finding that Arizona did not have exclusive, continuing jurisdiction over this matter. Specifically, Mother contends that the court erred when it "insisted on applying the 'home state' standard" of jurisdiction instead of the "significant connection" standard. Mother also asserts that because she still resides in Arizona, the court could not find that it lacked exclusive, continuing jurisdiction on the basis that there was no significant connection to Arizona. We disagree.

¶7      "Before it conducts a proceeding concerning legal decision-making or parenting time . . . a court in this state first must confirm its authority to do so to the exclusion of any other state . . . by complying with the uniform child custody jurisdiction and enforcement act[.]" Ariz. Rev. Stat. ("A.R.S.") § 25-402(A). Under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), an Arizona court "has jurisdiction to make an initial child custody determination" if Arizona is a child's "home state." A.R.S. § 25-1031(A)(1). Home state means "[t]he state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding[.]" A.R.S. § 25-1002(7)(a). Here, there is no dispute that the Arizona court made the initial custody determination as the Children's home state when Mother and Father divorced in 2010.

¶8      Once the initial custody determination is made, Arizona retains "exclusive, continuing jurisdiction" until "*neither the child, nor the child and one parent* . . . have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships." A.R.S. § 25-1032(A)(1) (emphasis added). "With certain exceptions [not present here] . . . the decision to discontinue exclusive, continuing jurisdiction belongs to the court exercising it, and no other." *Melgar v. Campo*, 215 Ariz. 605, 607, ¶ 11 (App. 2007). "We review *de novo* whether a court has subject matter jurisdiction under the UCCJEA," *Mangan v. Mangan*, 227 Ariz. 346, 350, ¶ 16 (App. 2011), but "will sustain the trial court's ruling on any theory supported by the evidence, even though the trial court's reasoning may differ from our own," *Lake Havasu Resort, Inc. v. Commercial Loan Ins. Corp.*, 139 Ariz. 369, 373 (App. 1983).

¶9      At the beginning of the evidentiary hearing, the superior court properly raised the threshold issue whether it had jurisdiction to

proceed and adjudicate a decision on Mother's petition to enforce the Parenting Plan. *See* A.R.S. § 25-402(A). The court stated,

> It's my understanding the children reside in Nebraska with father in conflict with the current parenting time order issued out of the State of Arizona. The children had been enrolled in school in Nebraska last year, and presumably are enrolled. I don't know if they've begun but it's school time, so presumably they are close to getting ready to start school or have started a week or two of school already. Folks, if that's the situation, as I understand it, Nebraska is the court with jurisdiction, the state with jurisdiction, and not Arizona.

The court and counsel held a lengthy discussion about the jurisdictional standards and the court read §§ 25-1031 and -1032 into the record. Mother's counsel argued that Arizona was the Children's home state because (1) the Children maintain personal relationships there, as evidenced by witnesses who were present in the courtroom and were prepared to so testify; and (2) Mother still lives there and had acted as a parent for the past year. At that point, the court instructed that the evidence presented would be narrowed to the preliminary question of jurisdiction. The court stated,

> We need to answer the jurisdictional question first. Folks, what I am willing to do today and this is with some reluctance, is to hear some very brief evidence about what is the home state of the children. I'm not going to hear about whether a parent or family was deprived. I will hear about what the parties' intentions were in regard to the children residing in Nebraska, and the intentions regarding the return of the children to Arizona.

¶10 Mother's counsel then asked Mother to speak "about significant connections with Arizona regarding your children." Mother testified that the Children have family and friends in Arizona with whom they keep in touch, she and Father had discussed extracurricular activities the Children would be involved in upon their return to Arizona, and she had already registered them for the upcoming school year. Mother said that she had not removed "all of their stuff" from the Children's rooms and still had their "beds and some clothes" in her home. Mother testified that during the year that the Children lived in Nebraska, she visited with them approximately nine times in Arizona and for one week in Nebraska. As for the Children's lives in Nebraska, Mother acknowledged that they have

"quite a few friends," are engaged in activities, go to school, and receive their medical treatment there, including J.S.'s counseling sessions.

¶11　　Father testified that from 2014-2016 while he lived in Nebraska and the Children lived with Mother, he visited them 196 days per year in both Arizona and Nebraska. He acknowledged that the Children still have family and friends in Arizona, but have only spoken with those friends once or twice over the last six months. Father testified that the Children are thriving in Nebraska, have many friends, and are involved in many activities, including soccer, viola, and choir. J.S. also receives counseling there. Father said the Children have good relationships with their extended family of step siblings, aunts, uncles, and cousins in Nebraska, and because Father is a stay-at-home parent, he has a lot of time to spend with them.

¶12　　After hearing testimony, the court relinquished its exclusive, continuing jurisdiction. *See Melgar*, 215 Ariz. at 607, ¶ 11 ("[T]he decision to discontinue exclusive, continuing jurisdiction belongs to the court exercising it, and no other.") Despite applying and labeling the incorrect "home state" standard under A.R.S. § 25-1031(A) (because this was not the initial custody determination), the court continued to properly analyze the "significant connection" standard under § 25-1032(A) to determine if Arizona retained exclusive, continuing jurisdiction. In doing so, the court found that Father and the Children no longer have a significant connection with Arizona and evidence of the Children's care, protection, training, and personal relationships is in Nebraska, not Arizona. The court found that

> Arizona no longer remains the home state of the children for a variety of reasons. They are smaller children, not physically present in Arizona, have not physically been present in Arizona for about a year and a half. Second, the children are enrolled and attending school currently in the State of Nebraska. The children may be enrolled, but they are not physically present here attending school. Third, the children participate in a variety of extracurricular activities in Nebraska including sports, activities, viola, gymnastics, club activities through the daughter's school. The children are fully engaged in activities in the State of Nebraska. Fourth, [J.S.] is participating in counseling in the State of Nebraska, has been participating in counseling in the State of Nebraska since shortly after his arrival there. Fifth, there's been no petition to relocate filed. The parties arranged this agreement between themselves without officially relocating through the

State of Arizona.  The children have now been out of the State of Arizona for over a year.  There is no order allowing the relocation so there is no [actual] consent by the State of Arizona.  When the children relocate to another state, for a period of time, this agreement was not approved by the State of Arizona, it just happened between the parties.  Now the children have been in Nebraska for over a year.  Six, [Mother] has had no significant parenting time with the children in the last year and a half.  By the testimony, 11 to 13 days or so, or 11 to 14 days with the children.  The children reside primarily in the State of Nebraska.  Seven, the children get all their medical care in the State of Nebraska including as I mentioned earlier those counseling services.  These children's home state at this point is Nebraska, not Arizona.  The Court's going to decline to exercise jurisdiction based on the fact that the home state of the children is currently the State of Nebraska.  This order, that does not mean that this order is unenforceable, this just means that this Court will not enforce the order today.  Nebraska is the home state at this point. Father can seek, or mother can seek enforcement of this order in the State of Nebraska.

¶13            Nevertheless, Mother argues that because the parties did not address the jurisdictional issues in their pretrial statements and the court made this ruling on its own, she "never had a fair chance to marshal evidence on the jurisdictional issue" and we "cannot uphold a decision based on factual findings that were never made on issues that were never tried."  The record belies Mother's argument.  Mother specifically argued the jurisdictional basis was proper under the significant connection standard of A.R.S. § 25-1032(A), the testimony was tailored to elicit such evidence, and despite conflating the two labels of "home state" and "significant connection," the court's findings establish that neither the Children nor Father have significant connections with Arizona and that substantial evidence is no longer available here concerning the Children's care, protection, training, and personal relationships.

**¶14** Thus, the court did not err in relinquishing its exclusive, continuing jurisdiction in favor of Nebraska.[1]

## CONCLUSION

**¶15** Based on the foregoing, we accept special action jurisdiction, but deny relief. In the exercise of our discretion, we deny both parties' request for attorneys' fees under A.R.S. § 25-324.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[1] Because we find that the superior court did not err in relinquishing its exclusive, continuing jurisdiction under Arizona Revised Statutes section 25-1032(A)(1), we do not address Mother's arguments that the court abused its discretion by refusing to enforce the Parenting Plan or deviating from the Parenting Plan without following the statutory process.